UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MADISON PARK CHURCH OF GOD, INC. | ) | Case No. 13-07430-RLM-11 |
| d/b/a MADISON PARK CHURCH OF GOD, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**DEBTOR'S PLAN OF REORGANIZATION**
**Dated September 11, 2013**

**Counsel for the Debtor:**

Jerald I. Ancel
Marlene Reich
Jeffrey J. Graham
Erin C. Nave
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204
Telephone:    (317) 713-3500
Facsimile:    (317) 713-3699
Email: jancel@taftlaw.com
       mreich@taftlaw.com
       jgraham@taftlaw.com
       enave@taftlaw.com

## TABLE OF CONTENTS

**Page**

**ARTICLE I - DEFINITIONS** ......................................................................... 1

**ARTICLE II - CLASSIFICATION OF CLAIMS** ...................................... 8

**ARTICLE III –TREATMENT OF CLAIMS** ............................................ 9

**ARTICLE IV - EXECUTORY CONTRACTS** ......................................... 14

**ARTICLE V - MEANS FOR EXECUTION OF THE PLAN** ................. 17

**ARTICLE VI – EXCULPATION AND RELEASE** ................................. 18

**ARTICLE VII - ACCEPTANCE OR REJECTION OF THE PLAN** ..... 19

**ARTICLE VIII - PROVISIONS GOVERNING DISTRIBUTIONS** ...... 20

**ARTICLE IX - MANAGEMENT OF THE REORGANIZED DEBTOR** ........................... 23

**ARTICLE X - EFFECTS OF CONFIRMATION** ................................... 23

**ARTICLE XI - RETENTION OF JURISDICTION** .............................. 24

**ARTICLE XII - MODIFICATION OF THE PLAN** .............................. 26

**ARTICLE XIII - DISCHARGE OF THE DEBTOR** ............................. 26

**ARTICLE XIV - MISCELLANEOUS PROVISIONS** ........................... 27

**EXHIBITS**

**Exhibit A – Sale Property**
**Exhibit B – Amended and Restated Promissory Note**
**Exhibit C – Amended and Restated Loan Agreement**
**Exhibit D – Amended and Restated Mortgage, Assignment of Rents and**
        **Security Agreement, Financing Statement and Fixture Filing**
**Exhibit E – Amended and Restated Trust Indenture (Series A)**
**Exhibit F – Amended and Restated Trust Indenture (Series B)**
**Exhibit G – Amended and Restated Trust Indenture (Series C)**
**Exhibit H – List of Rejected Executory Contracts**

1810181.11

## <u>ARTICLE I - DEFINITIONS</u>

As used in this Plan, the following terms shall have the meanings specified below, unless the context otherwise requires:

1.1     "<u>Allowed</u>" means, with respect to a Claim, any Claim, proof of which was timely and properly filed or, if no proof of Claim was filed, which has been or hereafter is listed by the Debtor on its Schedules as liquidated in amount and not disputed or contingent and, in either case, as to which no objection to allowance has been interposed on or before any applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent that such objection is determined in favor of the respective Holder.  Unless otherwise specified in this Plan, the Bankruptcy Code, or by order of the Bankruptcy Court, an "Allowed Claim" shall not, for purposes of computation and distributions under the Plan, include any interest on any such Claim from and after the Petition Date.

1.2     "<u>Allowed Secured Claim</u>" means an Allowed Claim to the extent of the value of collateral securing such Claim, as established by and in accordance with the provisions of this Plan or by a Final Order.

1.3     "<u>Bankruptcy Causes Of Action</u>" means all causes of action arising under §§ 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code.

1.4     "<u>Bankruptcy Code</u>" means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

1.5     "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division, conferred with authority over the Chapter 11 Case or the court so authorized with respect to any such proceeding.

1.6    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, including the local rules and general orders of the Bankruptcy Court.

1.7    "Cash" means cash and cash equivalents.

1.8    "Causes of Action" means any and all claims, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, whether arising before, on or after the Petition Date in contract or in tort, in law or in equity, or under any other theory of law other than Bankruptcy Causes of Action.  Without limiting the generality of the foregoing, when referring to Causes of Action of the Debtor or its Estate, "Causes of Action" shall include, but not be limited to: (a) rights of setoff, counterclaim, or recoupment, and claims on contracts or for breaches of duties imposed by law; (b) the right to object to Claims; and (c) such claims and defenses as fraud, mistake, duress and usury.

1.9    "Chapter 11 Case" means the voluntary bankruptcy case commenced by the Debtor under chapter 11 of the Bankruptcy Code, styled *In re Madison Park Church of God, Inc. d/b/a Madison Park Church of God*, Case No. 13-07430-RLM-11.

1.10   "Claim" means any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, unliquidated, legal, equitable, secured, or unsecured, known or unknown, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, secured or unsecured, known or unknown.

2

1.11   "Class" means any group of substantially similar Claims classified by the Plan pursuant to §§ 1122(a) and 1123(a)(1) of the Bankruptcy Code.

1.12   "Confirmation" means the entry of the Confirmation Order.

1.13   "Confirmation Date" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.14   "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

1.15   "Debtor" means Madison Park Church of God, Inc. d/b/a Madison Park Church of God, as debtor and debtor-in-possession.

1.16   "Disclosure Statement" means the disclosure statement, as the same may be amended and/or revised from time to time, which is required by § 1125 of the Bankruptcy Code and which accompanies the Plan.

1.17   "Disputed" means, with respect to a Claim: (a) any such Claim of which was timely and properly filed and (i) which has been or hereafter is listed on the Schedules as unliquidated, disputed, or contingent and which has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, or (ii) as to which the Debtor, Reorganized Debtor, or any other party-in-interest has interposed a timely objection or request for estimation that has not been withdrawn or determined by a Final Order; and (b) any Claim which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was filed untimely or improperly prior to (i) the time that an objection has been filed and (ii) the expiration of the time within which to object to such Claim set forth herein or otherwise established by order of the Bankruptcy Court.  For purposes of the Plan, a Claim shall be considered Disputed to the extent that the amount of the Claim specified in a proof of claim exceeds the amount of the

3

Claim scheduled by the Debtor as other than disputed, contingent or unliquidated.   Upon Confirmation and the occurrence of the Effective Date of the Plan, Claims that have been compromised and settled shall not be subject to dispute or objection by any Person or Entity for purposes of the Plan and shall be deemed Allowed as set forth in the Plan with regard to the consideration to be received as part of the settlement and compromise.

1.18    "Distribution Date" means the first (1st) day of the second (2nd) month following the Effective Date.

1.19    "Effective Date" means the date the Confirmation Order becomes a Final Order.

1.20    "Effective Date Payment" means the payment to be made by the Reorganized Debtor on the Effective Date to OSK and the Series A Trustee, allocated 75% to OSK and 25% to the Series A Trustee, in an amount equal to the Reorganized Debtor's cash on hand (net of Restricted Funds), less a capital expense reserve of $250,000 and an operating reserve of $200,000.

1.21    "Entity" means an entity as defined in § 101(15) of the Bankruptcy Code.

1.22    "Estate" means the estate created pursuant to § 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

1.23    "Executory Contracts" mean all prepetition contracts and leases of both real and personal property, the performance of which has not been completed by both parties.

1.24    "Final Order" means an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari or removal, or motion for re-argument or rehearing has expired and as to which no appeal, petition for certiorari or removal, re-argument or rehearing is then pending or, in the event an appeal, writ of certiorari, removal, re-argument or rehearing thereof has been sought, said appeal, writ of certiorari, removal, re-argument or rehearing has been

4

dismissed or such order of the Bankruptcy Court shall have been upheld by the highest court to which such order was appealed, or from which certiorari, removal, re-argument or rehearing was sought and the time to take any further appeal, petition for certiorari or removal, re-argument or rehearing shall have expired.

1.25    "Holder" means an Entity holding a Claim.  With respect to Classes 2 and 3, the Holder is the Series A Trustee and the Series B Trustee, respectively.

1.26    "Impaired" means any Claim or Class of Claims which is "impaired" within the meaning of § 1124 of the Bankruptcy Code.

1.27    "Order Approving Disclosure Statement" means the order entered in this Chapter 11 case by the Bankruptcy Court on _____, 2013 entitled Order (I) Approving Disclosure Statement, (II) Establishing Procedures For Solicitation And Tabulation Of Votes To Accept Or Reject Debtor's Plan Of Reorganization, (III) Scheduling Hearing on Confirmation Of Debtor's Plan Of Reorganization And (IV) Approving Related Notice Procedures.

1.28    "OSK" means OSK I, LLC, a Minnesota limited liability company.

1.29    "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, trustee, United States Trustee, estate, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency, or political subdivision thereof, or other entity.

1.30    "Petition Date" means July 12, 2013, the date on which the Debtor commenced the Chapter 11 Case.

1.31    "Plan" means the plan of reorganization proposed by the Debtor in the Chapter 11 Case, either in its present form or as it may be altered, amended, revised, or modified from time to time.

5

1.32    "Real Estate" means all of the real property owned by the Debtor which is located in Madison County, Indiana but specifically excludes Lot No. 1 in Mini-Plat No. 444, an approximate one (1) acre parcel of unimproved ground in Chesterfield, Indiana as more fully described in the Schedules.

1.33    "Reorganized Debtor" means reorganized Madison Park Church of God, Inc. d/b/a Madison Park Church of God, on and after the Effective Date.

1.34    "Restricted Funds" means funds given to the Reorganized Debtor but restricted as to use by the donor for typical and normal ministry and mission purposes.  Funds restricted for debt service or for payment to creditors other than OSK or the Series A Trustee shall not be included.

1.35    "Sale Property" means that portion of the Real Estate described on Exhibit "A" attached hereto and incorporated herein which the Debtor and/or Reorganized Debtor intends to sell.

1.36    "Schedules" mean the schedules of assets and liabilities and statement of financial affairs filed by the Debtor as required by § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any supplements or amendments thereto filed through and until the Confirmation Date.

1.37    "Secured Claim" means any Claim, or portion thereof, against the Debtor to the extent such Claim is secured within the meaning of §§ 506(a) or 1111(b) of the Bankruptcy Code.

1.38    "Series A Trustee" means Reliance Trust Company, a Georgia bank and trust company, or any successor trustee appointed under that certain Trust Indenture dated as of July

31, 2007, by and between Reliance Trust Company and the Debtor for the benefit of the bondholders holding First Mortgage Bonds, 2007 Series A.

1.39 "Series B Trustee" means Timothy Landis, PC, an Oregon Professional Corporation, or any successor trustee appointed under that certain Trust Indenture dated as of July 31, 2007, by and among Reliance Trust Company, Timothy Landis, PC, and the Debtor for the benefit of the bondholders holding Subordinate General Mortgage Bonds, 2007 Series B.

1.40 "Series C Trustee" means the Person or Entity appointed as successor trustee under that certain Trust Indenture dated as of July 31, 2007, by and among Reliance Trust Company, John B. Linford, A Professional Law Corporation and the Debtor for the benefit of the bondholders holding General Obligation Bonds, 2007 Series C.

1.41 "Trust Account Payment" means the payment on the Effective Date to be made to OSK on its Allowed Secured Claim by the Series A Trustee and to be credited by the Series A Trustee to the balance due the Allowed Class 2 Secured Claim, allocated 75% to OSK's Allowed Class 1 Claim and 25% to the Series A First Mortgage Bonds Allowed Class 2 Claim, in an amount equal to all funds held by the Series A Trustee in Trust Account No. 1412724 after deduction of the Series A Trustee's fees and expenses and any undistributed forbearance and adequate protection payments payable to the Series A bondholders.

1.42 "Unsecured Claim" means any Claim or portion thereof against the Debtor, other than Secured Claims and the unclassified Claims treated under Section 3.6 of the Plan.

1.43 "Voting Deadline" means _____ Eastern Standard Time, the deadline set by the Bankruptcy Court for parties to submit ballots to accept or reject this Plan.

## ARTICLE II - CLASSIFICATION OF CLAIMS

The Debtor is an Indiana Not for Profit Corporation whose members have no right to any distributions on liquidation or equity interest in the Debtor. Accordingly, there is no Class of equity interests to be classified.

Claims in Classes 1 through 5 are Impaired. Claims are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan, as follows:

2.1    Class 1: Secured Claim of OSK. Class 1 consists of the Secured Claim of OSK arising from a certain Promissory Note executed by the Debtor on July 31, 2007, in the original principal amount of $11,300,000, and subsequently assigned to OSK, such Claim being secured by liens on the following property of the Debtor: (i) certain unsold Series A First Mortgage Bonds; (ii) the Real Estate; and (iii) personal property.

2.2    Class 2: Secured Claim of the Series A Trustee. Class 2 consists of the Secured Claim filed by the Series A Trustee for the bondholders holding First Mortgage Bonds, 2007 Series A dated July 31, 2007, issued by the Debtor pursuant to a certain Trust Indenture, Trust No. 1412724, dated July 31, 2007 secured by the Real Estate and personal property of the Debtor.

2.3    Class 3: Unsecured Claim of the Series B Trustee. Class 3 consists of the Unsecured Claim[1] filed by the Series B Trustee for the bondholders holding Subordinate General Mortgage Bonds, 2007 Series B dated July 31, 2007, issued by the Debtor pursuant to a certain Trust Indenture, Trust No. 1412725, dated July 31, 2007 secured by the Real Estate and personal

---

[1]    Since the Class 3 Claim exceeds the value of the Real Estate and personal property, the Class 3 Claim is an Unsecured Claim.

8

property of the Debtor, which security interest and right to receive payment is subordinate to the liens securing and payment rights of the Class 1 and Class 2 Secured Claims.

2.4   <u>Class 4:  Unsecured Claim of the Series C Trustee</u>.  Class 4 consists of the Unsecured Claim filed by the Debtor for the Series C Trustee for the bondholders holding General Obligation Bonds, 2007 Series C dated July 31, 2007, issued by the Debtor pursuant to a certain Trust Indenture, Trust No. 1412726, dated July 31, 2007.

2.5   <u>Class 5   Unsecured Trade Claims</u>.  Class 5 consists of Holders of Unsecured Claims arising from the extension of trade debt and the rejection of Executory Contracts.

<u>ARTICLE III - TREATMENT OF CLAIMS</u>

3.1   <u>Class 1:  Allowed Secured Claim of OSK</u>.  OSK shall have an Allowed Secured Claim in the sum of $5,607,159.45, the amount due as of May 13, 2013, plus interest accrued at 7.9% per annum between May 13, 2013 and the Effective Date and adjusted by deducting: (i) the sum of forbearance payments made between May 13, 2013 and the Petition Date, together with adequate protection payments made to the Effective Date, the aggregate of which is multiplied by 2.22 for all such payments received by OSK on or before December 31, 2013 and 2.0 for any such payments received by OSK after December 31, 2013 but prior to July 1, 2014; and (ii) a sum equal to the difference between the accrued interest calculated on the balance due on May 13, 2013 to the Effective Date at 7.9% per annum and the accrued interest calculated on the balance due on May 13, 2013 to the Effective Date at 2% per annum.

The Allowed Class 1 Secured Claim will be satisfied, paid in full and secured as follows:

(a)   On the Effective Date, the Reorganized Debtor will pay OSK in Cash its share of the Effective Date Payment and OSK shall receive from the Series A Trustee its share of the Trust Account Payment.  OSK shall grant the Reorganized Debtor a credit against the

9

OSK Allowed Secured Claim equal to (i) 2.22 times the amount of such payments if made on or before February 15, 2014 and (ii) 2.0 times the amount of such payments if made after February 15, 2014 but prior to July 1, 2014.

(b)  On the Effective Date, the Reorganized Debtor will execute and deliver to OSK an Amended and Restated Promissory Note and an Amended and Restated Loan Agreement, each of which shall be in form and substance as set forth respectively in Exhibit "B" and Exhibit "C" attached hereto and made a part hereof.  Pursuant to Section 8.9 of the Amended and Restated Loan Agreement, on the Effective Date, the reorganized Debtor will pay OSK an amount not to exceed $20,000 for its reasonable expenses, including attorneys' fees.

(c)  On the Effective Date, the Reorganized Debtor will execute and deliver to OSK and the Series A Trustee, as co-mortgagees, an Amended and Restated Mortgage, Assignment of Rents and Security Agreement, Financing Statement and Fixture Filing in form and substance  as set forth in Exhibit "D" attached hereto and made a part hereof, which grants a first mortgage on the Real Estate and a security interest in the personal property described therein.

(d)  On the Effective Date, the Series A First Mortgage Bonds pledged to OSK as collateral shall be cancelled and returned to the Reorganized Debtor.

3.2    Class 2:  Allowed Secured Claim of the Series A Trustee.  The Series A Trustee shall have an Allowed Secured Claim in the sum of $6,841,447.08, the amount due as of May 13, 2013, plus interest accrued at the rate of 7.9% per annum between May 13, 2013 and the Effective Date and adjusted by deducting: (i) the sum of forbearance payments made between May 13, 2013 and the Petition Date, together with adequate protection payments made to the

Effective Date; and (ii) a sum equal to the difference between the accrued interest calculated on the balance due on May 13, 2013 to the Effective Date at 7.9% per annum and the accrued interest calculated on the balance due on May 13 2013 to the Effective Date at 2.5% per annum.

Each Series A bondholder shall have a percentage interest in the Allowed Class 2 Secured Claim as reflected in the proof of claim filed by the Series A Trustee (determined by dividing the face value of the bonds owned by such bondholder on the Petition Date by the aggregate Allowed Class 2 Claim filed by the Series A Trustee). The Allowed Class 2 Secured Claim will be satisfied, paid in full and secured follows:

(a)     On the Effective Date, the Reorganized Debtor will pay the Series A Trustee in Cash its share of the Effective Date Payment and authorize release of the Series A Trustee's share of the Trust Account Payment to the Series A Trustee for distribution to each of the bondholders with an interest in the Allowed Class 2 Secured Claim.

(b)     On the Effective Date, the Reorganized Debtor will execute and deliver to the Series A Trustee an Amended and Restated Trust Indenture which shall be in form and substance as set forth in Exhibit "E" attached hereto and made a part hereof.

(c)     On the Effective Date, the Reorganized Debtor will execute and deliver to the Series A Trustee and OSK, as co-mortgagees, an Amended and Restated Mortgage, Assignment of Rents and Security Agreement, Financing Statement and Fixture Filing in form and substance  as set forth in Exhibit "D" attached hereto and made a part hereof, which grants a first mortgage on the Real Estate and a security interest in the personal property described therein.

3.3     Class 3:  Allowed Unsecured Claim of the Series B Trustee. The Series B Trustee shall have an Allowed Unsecured Claim in the amount of $6,384,090.09.   Each Series B

11

bondholder shall have a percentage interest in the Allowed Class 3 Unsecured Claim as reflected in the proof of claim filed by the Series B Trustee (determined by dividing the face value of the bonds owned by such bondholder on the Petition Date by the aggregate Allowed Class 3 Claim filed by the Series B Trustee).  The Allowed Class 3 Unsecured Claim will be satisfied and paid in full as follows:

(a)     On the Effective Date, the Reorganized Debtor will execute and deliver to the Trustee an Amended and Restated Trust Indenture which shall be in form and substance as set forth in Exhibit "F" attached hereto and made a part hereof.

(b)     On the Effective Date, the Series B Trustee will execute and deliver to the Reorganized Debtor a release of that certain Mortgage, Assignment of Rents and Security Agreement, Financing Statement and Fixture Filing dated August 13, 2007 and recorded August 23, 2007 as Instrument No. 2007016043 in the Office of the Recorder of Madison County, Indiana.

3.4     Class 4:  Allowed Unsecured Claim of the Series C Trustee:  The Series C Trustee shall have an Allowed Unsecured Claim in the amount of $2,497,245.00.  Each Series C bondholder shall have a percentage interest in the Allowed Class 4 Claim as reflected in the proof of claim filed by the Debtor on behalf of the Series C Trustee (determined by dividing the face value of the bonds owned by such bondholder on the Petition Date by the aggregate Allowed Class 4 Claim filed by the Debtor).  The Allowed Class 4 Unsecured Claim will be satisfied and paid in full as follows: on the Effective Date, the Reorganized Debtor will execute and deliver to the Trustee an Amended and Restated Trust Indenture which shall be in form and substance as set forth in Exhibit "G" attached hereto and made a part hereof.

12

3.5     Class 5:  Allowed Unsecured Trade Claims.  Allowed Class 5 Claims will be satisfied and paid in full as follows:

Commencing on the Distribution Date and continuing on the same day of each month thereafter for two (2) consecutive months, the Reorganized Debtor will make a Cash payment to each Holder of an Allowed Class 5 Claim in an amount equal to one-third of its Allowed Claim.

3.6     Unclassified Claims.   On the Effective Date, Allowed Claims that are not classified in the Plan will be satisfied as follows:

3.6.1     Administrative Claims (Bankruptcy Court Costs and Professional Fees).  These Allowed Claims for costs and expenses of administration, including: (a) Bankruptcy Court costs and professional fees incurred by the Debtor on or after the Petition Date or otherwise incurred in connection with the Chapter 11 Case to the extent allowed by the Bankruptcy Court and payable by the Debtor pursuant to §§ 330 or 503(b) of the Bankruptcy Code; and (b) fees payable to the Office of the United States Trustee, all of which have priority under § 507(a)(2) of the Bankruptcy Code, will be paid in full, in Cash, upon the later of (y) the Distribution Date; or (z) as soon as practicable after the Claim has become an Allowed Claim.  These Claims are not classified under the Plan, and the Holders of such Allowed Claims, if any, are not entitled to vote on the Plan.

3.6.2     Administrative Operating Expenses.   These represent Allowed Claims for administrative operating expenses incurred by the Debtor in the operation of its business on or after the Petition Date, which have priority under § 507(a)(2) of the Bankruptcy Code.  Because the Debtor intends to budget for and pay such Allowed Claims prior to Confirmation, it believes that there will be no such Allowed Claims to be

13

paid under the Plan. To the extent that any such Allowed Claims do exist, however, all such Allowed Claims shall be assumed and paid by the Reorganized Debtor in the ordinary course of business after the Effective Date in accordance with established terms. In the event any such Allowed Claim arises from a payment default existing on the Effective Date, "in the ordinary course of business after the Effective Date in accordance with established terms" shall mean the later of (a) the Effective Date, or (b) a Final Order allowing the Claim under § 503(b) of the Bankruptcy Code.  These Claims are not classified under the Plan, and the Holders of such Allowed Claims, if any, are not entitled to vote on the Plan.

        3.6.3     <u>Priority Taxes</u>.  The Allowed Claims for real estate taxes and federal withholding taxes will be paid in full when due.  Those Claims are not Impaired and the Holders of such Allowed Claims are not entitled to vote on the Plan.

<b><u>ARTICLE IV - EXECUTORY CONTRACTS</u></b>

4.1    <u>Treatment of Executory Contracts</u>.  Effective on and as of the Effective Date, and except as otherwise provided in the Plan, any and all Executory Contracts that exist between the Debtor and any party which are not specified on the list of Executory Contracts to be rejected by the Debtor as set forth on Exhibit "H" attached hereto and made a part hereof, shall be specifically assumed by the Debtor and assigned to the Reorganized Debtor pursuant to the Plan; *provided*, *however*, that the Debtor shall have the right, at any time prior to the Effective Date, to amend Exhibit "H" to add any Executory Contract not listed thereon, thus providing for its rejection by the Debtor pursuant to this Article, or delete any Executory Contract listed thereon, thus providing for its assumption by the Debtor and assignment to the Reorganized Debtor pursuant to this Article.  All Executory Contracts not listed on Exhibit "H", as modified from

14

time to time, shall be assumed by the Debtor and assigned to the Reorganized Debtor on the Effective Date. The Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute an order of the Bankruptcy Court (a) approving such assumption and assignment as of the Effective Date pursuant to §§ 365 and 1123(b)(2) of the Bankruptcy Code and this Article; (b) extending the time, pursuant to § 365(d)(4) of the Bankruptcy Code and this Article, within which the Debtor may assume, assume and assign, or reject such Executory Contracts through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such Executory Contract; and (c) approving, pursuant to §§ 365(a) and 1123(b)(2) of the Bankruptcy Code, the rejection of those Executory Contracts not assumed and assigned pursuant to this Article.

  4.2 <u>Cure of Defaults for Assumed Executory Contracts</u>. The Debtor believes that it is not in default on any Executory Contract to be assumed and assigned, and no cure, compensation, or adequate assurance of future performance is required under § 365(b)(1) of the Bankruptcy Code to assume and assign such Executory Contracts, and the Plan does not provide for any cure, compensation, or adequate assurance of future performance prior to the assumption by the Debtor and assignment to the Reorganized Debtor of those Executory Contracts.

  4.3 <u>Resolution of Objections to Assumption of Executory Contracts or Cure Payments</u>. Any party objecting to the Debtor's proposed assumption of any Executory Contract, including the Debtor's contention that no cure, compensation, or adequate assurance of future performance is required under § 365(b)(1) of the Bankruptcy Code to assume and assign such Executory Contract, shall file and serve a written objection to the assumption and assignment of such Executory Contract on or before the deadline set by the Bankruptcy Court for filing objections to Confirmation of the Plan. Failure to file an objection within that time period shall

constitute consent to the assumption and assignment of such Executory Contracts, including an acknowledgement that no cure, compensation, or adequate assurance of future performance is required under § 365(b)(1) of the Bankruptcy Code to do so.

To the extent that any objection to the assumption and assignment of an Executory Contract is based upon the assertion that the Reorganized Debtor is unable to provide adequate assurance of future performance under such Executory Contract, the Bankruptcy Court shall hear and determine such objection at the hearing on Confirmation of the Plan.

To the extent that any objection to the assumption and assignment of an Executory Contract is based upon the assertion that the Debtor is required to cure a default or provide compensation prior to assumption of such Executory Contract, and such objection is not resolved between the Debtor or the Reorganized Debtor and the objecting party, the Bankruptcy Court shall resolve such dispute at a hearing to be held at a date to be determined by the Bankruptcy Court. The resolution of such dispute shall not affect the Debtor's assumption of the Executory Contract or assignment of the Executory Contract to the Reorganized Debtor, but rather shall affect only the monetary amount required to be paid prior to assumption. Notwithstanding the immediately preceding sentence, if the Debtor or the Reorganized Debtor determine in their sole discretion that the monetary amount required to be paid prior to assumption would, if ordered by the Bankruptcy Court, make the assumption of the Executory Contract imprudent, then the Debtor or Reorganized Debtor may elect to reject the Executory Contract or seek an immediate hearing on the cure amount and reserve the right to reject the Executory Contract pursuant to this Article following the Bankruptcy Court's decision.

16

## ARTICLE V - MEANS FOR EXECUTION OF THE PLAN

5.1     Funding of the Plan.  The Plan will be funded by: (a) the Cash on hand, that will be transferred to the Reorganized Debtor, on the Effective Date; (b) the weekly tithing and other unrestricted donations of members and miscellaneous income; and (c) the sale of the Sale Property.

5.2     Execution of Amended and Restated Instruments and Vesting of Assets in the Reorganized Debtor.  On the Effective Date,  the Reorganized Debtor will execute and deliver each of the amended and restated instruments attached to the Plan as Exhibits "B", "C", "D","E", "F" and "G", and all of the assets, properties, and rights of the Debtor of every type and description, tangible, intangible, wherever located, including post-petition leases, shall be transferred and automatically vest in the Reorganized Debtor, free and clear of all liens, claims, rights of setoff, security interests, pledges, encumbrances, adverse rights of interest, covenants, charges, debts, and contractually imposed restrictions, and all such liens, claims, rights of setoff, security interests, pledges, encumbrances, adverse rights of interest, covenants, charges, debts, and contractually imposed restrictions shall be extinguished, except as provided for in the Plan. All Causes of Action of the Debtor under any theory of law or equity, including, without limitation, the Bankruptcy Code, and in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, but excluding Bankruptcy Causes of Action, shall be transferred on the Effective Date to the Reorganized Debtor, which shall then have the right to commence, prosecute, abandon, settle, or compromise, as appropriate, all such Causes of Action.

Pursuant to the Amended and Restated Trust Indentures (see Exhibits E, F and G), the existing Series A, B, and C bonds issued in 2007 will be cancelled as of the Effective Date and

1810181.11

replaced with new bonds.  Reliance Trust Company will handle the replacement of the bonds and continue as the Paying Agent (as defined in the Amended and Restated Trust Indentures) for distributions to all bondholders under the Series A, B, and C Amended and Restated Trust Indentures.

5.3     Authorization to Effectuate the Plan.  The entry of the Confirmation Order shall constitute authorization for the Debtor and/or the Reorganized Debtor to take or cause to take all action necessary and appropriate to consummate and implement the Plan prior to and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have occurred and shall be in effect from and after, but subject to the occurrence of, the Effective Date pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the Debtor and/or the Reorganized Debtor.

5.4     Bankruptcy Causes of Action.  Neither the Debtor nor the Reorganized Debtor believe the commencement and pursuit of any Bankruptcy Causes of Action are warranted or would benefit the Estate, and all Bankruptcy Causes of Action shall be waived and released as of the Effective Date.

## ARTICLE VI – EXCULPATION AND RELEASE

6.1     Exculpation.  Except for acts or omissions constituting gross negligence or willful misconduct, the Debtor and its Board of Elders,  employees, agents, and professionals shall neither have nor incur any liability to any Person or Entity for any act taken, or omitted to be taken, prior to or after the Petition Date in connection with, or related in any way to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or consummating the Plan, the Disclosure Statement, or any contract, instrument, release, or any other agreement or document created, or entered into, in connection with the Plan, or any other

18

act taken, or omitted to be taken, prior to or after the Petition Date in connection with, or in contemplation of the Chapter 11 Case and all previous efforts at restructuring or refinancing the Debtor's obligations.

6.2     <u>Release of OSK in Amended and Restated Loan Agreement</u>.  On the Effective Date, the Reorganized Debtor will execute and deliver to OSK the Amended and Restated Loan Agreement attached hereto as Exhibit "C" which includes a release of OSK, its transferees, successors, representatives, assigns, predecessors, subsidiaries, divisions, related entities and attorneys, agents, officers, directors and employees for past and/or present Claims (as defined in the Amended and Restated Loan Agreement) up to the Effective Date.

<b><u>ARTICLE VII - ACCEPTANCE OR REJECTION OF THE PLAN</u></b>

7.1     <u>Voting of Claims</u>.  Each Holder of an Allowed Claim in Impaired Classes 1 and 5 and each bondholder holding an interest in the Allowed Claims in Impaired Classes 2, 3 and 4 shall be entitled to vote to accept or reject the Plan by following the procedures set forth in the Order Approving Disclosure Statement.  If the Debtor has objected to the Claim of a creditor, the Holder of such Disputed Claim is not entitled to vote on the Plan absent further order of the Bankruptcy Court.  No Holder of a Claim that has been disallowed by the Bankruptcy Court shall be entitled to vote to accept or reject the Plan or have any rights under the Plan.

7.2     <u>Acceptance by a Class</u>.  Consistent with § 1126(c) of the Bankruptcy Code, and except as provided for in § 1126(e) of the Bankruptcy Code, a Class shall have accepted the Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the Holders of Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.  With respect to determining the vote of the Holders of Allowed Claims in Classes 2, 3

19

and 4, the vote of each bondholder in a Class will be aggregated (by percentage interest and number) to determine any acceptance or rejection by the Holder.

      7.3   <u>Cramdown</u>.  Should any Impaired Class not vote to accept the Plan, the Debtor will request, pursuant to § 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the failure of an Impaired Class to vote in favor of the Plan.

<b><u>ARTICLE VIII - PROVISIONS GOVERNING DISTRIBUTIONS</u></b>

      8.1   <u>Objections to Claims</u>.  To the extent not previously done, objections to Claims shall be filed with the Bankruptcy Court and served upon each Holder of a Claim to which an objection is made on or before the date that is thirty (30) days after the Confirmation Date, or such other time as is authorized by order of the Bankruptcy Court.  The failure by the Debtor or Reorganized Debtor to object to or to examine any Claim shall not be deemed to be a waiver of the right to object to or to examine such Claim in whole or in part to determine its allowability for payment.  No party shall be required to object to any Claim where no purpose would be served.

      8.2   <u>Resolution of Disputed Claims</u>.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Debtor and the Reorganized Debtor shall have the right to make and file objections to Claims and shall serve a copy of each objection on the Holder of such Claim within the timeframe set forth in the Plan.  All objections shall be litigated to a Final Order except to the extent the party who raised the objection elects to withdraw any such objection or such party and the Holder of such Claim elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court; provided however, that any such

20

compromise, settlement, or other resolution of a Disputed Claim which results in an Allowed Claim which is more than $10,000.00 different than the original amount of the Disputed Claim shall require approval of the Bankruptcy Court.

8.3    Estimation.  The Debtor or Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Debtor or Reorganized Debtor have previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction pursuant to the Plan to estimate such Claim at any time, including during litigation concerning an objection thereto.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount may constitute either the amount of the Allowed Claim or a maximum limitation of such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim.

8.4    Procedures.  The aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.

8.5    Payment to Holders of Formerly Disputed Claims.  If, on and after the Distribution Date, a Disputed Claim becomes an Allowed Claim and therefore is entitled to payment under the Plan, the Reorganized Debtor shall distribute payment to such Holder of an Allowed Claim as provided in Article III of the Plan as soon thereafter as is practicable from the date the Disputed Claim becomes an Allowed Claim; provided however, such distributions shall not provide such Holder more than it would have received had it held an Allowed Claim at the time of any prior distributions under Article III.

21

8.6     Delivery of Distributions and Undeliverable Distributions.  Distributions to the Holders of Allowed Class 2, 3, and 4 Claims shall be made to Reliance Trust Company, as the Paying Agent (defined in the Amended and Restated Trust Indentures) and disbursed pursuant to the terms of the applicable Amended and Restated Trust Indenture. Distributions to the Holders of Allowed Class 1 and 5 Claims shall be made by the Reorganized Debtor to the address of each such Holder as set forth in the Schedules filed with the Bankruptcy Court unless superseded by the address as set forth on the proof(s) of claim filed by such Holder or other writing notifying the Reorganized Debtor of a change of address.  If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless the Reorganized Debtor is notified of a new address within sixty (60) days after the date such distribution is made to such Holder's address as last known by the Debtor and Reorganized Debtor.  Should such Holder notify the Reorganized Debtor of its current address within the time frame provided above, the Reorganized Debtor shall make any undelivered distributions to the Holder's new address, without interest.

In the event that a Holder of a Claim does not notify the Reorganized Debtor of a new address within sixty (60) days of a distribution being returned as undeliverable, and the Reorganized Debtor, after reasonably diligent efforts, is unable to find a new address within such time period, all prior distributions to that Holder returned as undeliverable shall become property of the Reorganized Debtor and no further distributions to such Holder shall be made.  Any Holder of an Allowed Claim relating to an undeliverable distribution who does not assert such entitlement within the timeframes set forth in this Article shall have its Claim discharged and forever barred as against the Debtor and the Reorganized Debtor, and their successors, assets,

22

and properties, and their creditors, and any obligation to such Holder shall be deemed null and void.

8.7     Time Bar to Cash Payments.  Checks issued by the Reorganized Debtor with respect to Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  Requests for reissuance of any check shall be made to the Reorganized Debtor by the Holder of the Allowed Claim to whom such check was originally issued within sixty (60) days after the date the check was originally issued.

8.8     Professional Fees and Expenses.  Each professional retained with approval by  an order of the Bankruptcy Court or requesting compensation in the Chapter 11 Case pursuant to §§ 330, 331 or 503(b) of the Bankruptcy Code shall be required to file an application for allowance of final compensation and reimbursement of expenses incurred through the Effective Date within thirty (30) days of the Effective Date.  Objections to any such application shall be filed in accordance with the notice of motion and opportunity to object filed with such application.

## ARTICLE IX - MANAGEMENT OF THE REORGANIZED DEBTOR

The Board of Elders and Officers of the Debtor serving in such capacity as of the Confirmation Date will continue to serve in such capacities as members of the Board of Elders and Officers of the Reorganized Debtor, subject to any future action taken by the Reorganized Debtor's Board of Elders or members in accordance with applicable non-bankruptcy law.

## ARTICLE X - EFFECTS OF CONFIRMATION

10.1     Release of Assets.  Until the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Debtor and its Estate, assets, and properties.  On the Effective Date, all property transferred to the Reorganized Debtor and all rights of the Reorganized Debtor shall be removed from the jurisdiction of the Bankruptcy Court (subject to the provisions of Article XI of

23

the Plan) and the Reorganized Debtor may use, acquire, sell, assign, transfer, license, or dispose of property free from any restrictions of the Bankruptcy Code or the Bankruptcy Rules, subject to the requirements of this Plan.

10.2    <u>Binding Effect</u>.  Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, on and after the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against the Debtor and its respective successors and assigns, whether or not the Claim is Impaired under the Plan and whether or not such Holder has accepted the Plan.

10.3    <u>Term of Injunction or Stays</u>.  Unless otherwise provided herein or by an order of the Bankruptcy Court, all injunctions or stays provided for in the Chapter 11 Case pursuant to §§ 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date shall remain in full force and effect until all distributions required to be made under this Plan have been made.

10.4    <u>Injunction</u>.    On and after the Effective Date, all Persons and Entities are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of or respecting any Claim, debt, interest, or right of the Debtor as well as on account of or respecting any Cause of Action or Bankruptcy Cause of Action of the Debtor for which the Reorganized Debtor retains sole and exclusive authority to pursue in accordance with the Plan.

<b><u>ARTICLE XI - RETENTION OF JURISDICTION</u></b>

The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of, or related to the Chapter 11 Case and this Plan pursuant to, and for the purposes of, §§ 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

24

1810181.11

(1)    To hear and determine pending applications for the rejection of Executory Contracts, if there are any pending, and the allowance of Claims resulting therefrom;

(2)    To determine any and all adversary proceedings, applications, contested matters, and Causes of Action (whether filed before or after the Effective Date);

(3)    To hear and determine any objections to, or requests for estimation of, Claims (whether filed before or after the Effective Date);

(4)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(5)    To issue such orders in aid of execution of the Plan, to the extent authorized by § 1142 of the Bankruptcy Code;

(6)    To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(7)    To hear and determine all applications for compensation and reimbursement of expenses of professionals under §§ 330, 331, and 503(b) of the Bankruptcy Code;

(8)    To hear and determine disputes arising in connection with the retention or compensation of attorneys and other professionals retained pursuant to §§ 327 and 328 of the Bankruptcy Code;

(9)    To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and the Confirmation Order;

(10)    To ensure that distributions to Holders of Allowed Claims are accomplished as provided in this Plan;

25

1810181.11

(11)    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(12)    To hear and determine other issues presented or arising under this Plan, including disputes among Holders of Claims, and arising under agreements, instruments, and documents executed in connection with this Plan;

(13)    To hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

(14)    To hear any other matter related hereto and not inconsistent with the Bankruptcy Code; and

(15)    To enter a final decree closing the Chapter 11 Case.

## ARTICLE XII - MODIFICATION OF THE PLAN

The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan at any time prior to the entry of the Confirmation Order.  After the entry of the Confirmation Order, the Reorganized Debtor may, upon notice and hearing, or an order of the Bankruptcy Court, amend or modify the Plan in accordance with § 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  A Holder of a Claim that is deemed to have accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such Holder.

## ARTICLE XIII - DISCHARGE OF THE DEBTOR

Except as otherwise provided in § 1141(d), the Plan, or the Confirmation Order, the occurrence of the Effective Date shall discharge the Debtor from any debt that arose prior to the

Effective Date and any debt of a kind specified in §§ 502(g), (h) or (i) of the Bankruptcy Code, whether or not:

      (1)     a proof of claim based upon such debt is filed under § 501 of the Bankruptcy Code;

      (2)     a Claim based upon such debt is allowed under § 502 of the Bankruptcy Code; or

      (3)     the Holder of a Claim based upon such debt has accepted the Plan.

## ARTICLE XIV - MISCELLANEOUS PROVISIONS

14.1    <u>Courts of Competent Jurisdiction</u>.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

14.2    <u>Fees and Expenses of the Professionals of the Debtor through the Effective Date</u>. All fees and expenses payable to the Debtor's professionals that are incurred through the Effective Date and allowed by the Bankruptcy Court shall be paid in accordance with Article 3.6.1 of the Plan.

14.3    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to Chapter 123 of Title 28, United States Code, as determined by the Bankruptcy Court, shall be treated as Allowed Claims and paid in accordance with Article 3.6.1 of the Plan up through the quarter in which this Chapter 11 Case is closed.

14.4    <u>Filing of Post-Confirmation Reports</u>.  The Reorganized Debtor shall be responsible for preparing and filing any post-Confirmation reports required by the Bankruptcy Court.

1810181.11

14.5    <u>Severability</u>.   In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid and enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision to be held invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.6    <u>Governing Law</u>.   Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Indiana, without giving effect to the principles of conflicts of law thereof.

14.7    <u>Headings</u>.   Headings used in the Plan are for convenience and reference only, and shall not constitute part of the Plan for any other purpose.

14.8    <u>Successors and Assigns</u>.   The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any successor or assign of such Person or Entity.

14.9    <u>Application of § 1146 of the Bankruptcy Code</u>.   The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan shall

28

be entitled to the tax treatment provided by § 1146 of the Bankruptcy Code and each recorder or

other agent of any governmental office shall record any such document of issuance, transfer or

exchange without any further direction or order from the Bankruptcy Court.


Dated: September 11, 2013                    MADISON  PARK CHURCH OF GOD, INC.
                                             Debtor and debtor-in-possession,

                                             By:     /s/ F. Rob Spaulding
                                                     F. Rob Spaulding, Business Administrator

29